IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **I N F O R M A T I O N** |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:19 CR 240 |
| v. | ) | _____ |
| | ) | Title 18, United States Code, |
| | ) | Section 1341 |
| CHRISTOPHER M. HARDIN, | ) | |
| | ) | |
| Defendant. | ) | |

**JUDGE POLSTER**

COUNT 1
(Mail Fraud, 18 U.S.C. § 1341)

The United States Attorney charges:

1.      At all times material herein, Defendant CHRISTOPHER M. HARDIN was a resident of Strongsville, Ohio, which is located in the Northern District of Ohio, Eastern Division.

2.      HARDIN established American Safety Surface & Recreation, LLC ("ASSR"), an Ohio limited liability corporation with its principal place of business in Broadview Heights, Ohio, in September 2011.  ASSR conducted playground surfacing related business in multiple states including Ohio; New Jersey; Iowa; California; Maryland; Alabama; Utah; Michigan; West Virginia; New York; Texas; and South Carolina.

3.      Between approximately September 2011 and November 2016, HARDIN promised clients the installation of playground renovations and installations, and obtained deposits for the projects in the approximate amount of $172,964 and failed to complete the projects.

4.      HARDIN ordered and obtained approximately $261,083.12 in playground renovation and installation materials from OTS Company, South Carolina, for which payment was not made.

5.      HARDIN subcontracted approximately $270,127.61 worth of playground renovations and installation projects to MJD's Property Solutions, LLC, for which payment was not made.

**The Scheme to Defraud and Obtain Money and Property**

6.      From in or around September 2011 through in and around November 2016, in the Northern District of Ohio, Eastern Division and elsewhere, Defendant CHRISTOPHER M. HARDIN knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property by materially false and fraudulent pretenses, representations, and promises.

7.      HARDIN devised a scheme to defraud clients, playground materials suppliers, and subcontractors through materially false and fraudulent misrepresentations and omissions of facts regarding ASSR's financial condition, the use of clients' deposit funds and disposition of client payments.

8.      It was part of the scheme that HARDIN fraudulently misrepresented to clients the use of the project deposits, the timing of project completion, and issues causing delay in the projects, when in fact, HARDIN then well knew he was using client funds for purposes other than what he had promised.

9.      It was part of the scheme that HARDIN fraudulently misrepresented to material suppliers the use of the ASSR funds, ASSR's profitability, and issues causing delay in the

2

payments to the material suppliers, when in fact, HARDIN then well knew ASSR had available funds to make payments to the material suppliers.

10.     It was part of the scheme that HARDIN fraudulently misrepresented to subcontractors the use of the ASSR funds and client payments to ASSR, when in fact, HARDIN then well knew he was using client payments for purposes other than paying subcontractors.

11.     It was part of the scheme that HARDIN made false encouraging statements about the progress of obtaining materials, new projects, and payment plans to lull clients, material suppliers, and subcontractors into a false sense of security, to encourage extending additional credit or time to complete the projects, and prevent the clients, material suppliers and subcontracts to request their money back or payment for services provided or going to the authorities.

12.     It was part of the scheme that HARDIN misused client project deposits for personal expenses including purchasing a vehicle, restaurant and bar purchases, and clothing unrelated to ASSR projects.

13.     It was part of the scheme that HARDIN misused client project deposits and payments while he continued to obtain new projects, knowing the money was going to be used for personal expenses unrelated to the projects.

14.     As a result of the scheme, the following customers sustained losses in the approximate amounts listed below for deposits that they provided to HARDIN for work that was never performed:

| | | |
|---|---|---|
| a. | Plainview Co-Op Nursery School: | $28,755.00 |
| b. | Hudson Valley SportsDome, Inc.: | $28.380.00 |
| c. | Saint Bellarmine Church: | $21,375.00 |
| d. | St. Stephan of Hungary School, New York, NY: | $18,450.00 |

e.    St. Paul Lutheran Church & School, Ogden, UT:          $ 6,550.00

f.    Domestic Violence Child Advoc. Ctr., Cleveland, OH:    $15,900.00

g.    Norbeck Montessori, Rockville, MD:                     $ 6,000.00

h.    Village of Dolgeville, NY:                             $ 4,000.00

i.    Northfield Presbyterian Daycare Center, Northfield, OH: $ 7,125.00

j.    All Kids First I & II, Vineland, NJ:                   $ 9,500.00

k.    NORWESCAP, Inc., Phillipsburg, NJ:                     $ 2,475.00

l.    John Link, Thompson, OH:                               $    300.00

m.    Little Wonders Daycare, San Mateo, CA:                 $ 6,629.00

n.    Lorene Cosimo, Cummings, IA:                           $ 1,825.00

o.    Jan & Niles Davies Learning Center, West Haverstraw, NY: $15,700.00

15.    Beginning in February 2012 through September 2012, HARDIN placed approximately 54 orders for materials and supplies from OTS Manufacturing and Supply, Inc. ("OTS"), totaling $507,451.50 of which HARDIN owes approximately $261,083.12.  HARDIN fraudulently misrepresented to OTS the use of the ASSR funds, ASSR's profitability and issues causing delay in the payments to the material suppliers, when in fact, HARDIN then well knew, ASSR had available funds to make payments to the material suppliers.

16.    As a result of the scheme, HARDIN caused OTS to suffer an actual loss of approximately $261,083.12.

17.    Between March 2014 and November 2015, HARDIN subcontracted at least 20 playground resurfacing projects with MJD's Property Solutions, LLC ("MJD"), of which HARDIN owes MJD approximately $270,127.61 for completed projects.  HARDIN fraudulently misrepresented to MJD the use of the ASSR funds and client payments to ASSR, when in fact,

HARDIN then well knew he was using client payments for purposes other than paying subcontractors.

18.     As a result of the scheme, HARDIN caused MJD to suffer an actual loss of approximately $270,127.61.

### Execution of the Scheme

19.     In furtherance of and to execute the scheme and artifice, on or about the dates listed below, Defendant CHRISTOPHER M. HARDIN caused the following items described below to be delivered through the U.S. mails or by commercial carrier from the locations described below to the Northern District of Ohio, Eastern Division.

| Date | Description of Item | Origin |
|---|---|---|
| Apr. 21, 2015 | Check from Plainview Co-Op Nursery School | Plainview, NY |
| Apr. 23, 2015 | Check from Hudson Valley SportsDome, Inc. | Milton, NY |
| May 16, 2014 | Check from Saint Bellarmine Church | Omaha, NE |

All in violation of Title 18, United States Code, Section 1341.

JUSTIN E. HERDMAN
United States Attorney

By:   _____
Robert W. Kern
Chief, White Collar Crimes Unit